## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF KENTUCKY
## AT LOUISVILLE

JOE HAND PROMOTIONS, INC.                                                        PLAINTIFF

V.                                           CIVIL Action No. 3:07-CV-406-JDM

BILLY E. WILLIAMS, SR. and DIANE L. WILLIAMS
d/b/a BILLY'S PLACE                                                DEFENDANTS

## **MEMORANDUM OPINION**

Joe Hand Promotions, Inc. has filed suit against the defendants (referred to herein for ease of reference as "Billy's Place") pursuant to 47 U.S.C. §§ 553 and 605 for broadcasting a pay-per-view boxing match without the appropriate authorization. Joe Hand now requests summary judgment in its favor with respect to defendants' liability.

The court has considered Joe Hand's request, the defendants' response thereto, and the pleadings and evidence in the record, and finds that summary judgment of defendants' liability is warranted. Accordingly, for the reasons stated herein, the court will enter an order granting Joe Hand's motion for summary judgment and setting this matter for trial on the sole remaining issue of the amount of damages to be awarded.

### I.

Viewed in the light most favorable to Billy's Place, the facts of this case are as follows. On August 6, 2005, Showtime[1] broadcast via closed-circuit a boxing match between Jeff Lacy and Robin Reid. Included in this telecast were the preliminary bouts, one of which included the

---

[1] *See* http://www.thesweetscience.com/boxing-article/2468/lacy-reid-fight-predictions/

boxer J.L. Castillo. This closed-circuit broadcast (the "Event") was "encoded" and thus available for viewing only by purchase of the information or equipment necessary to "unscramble" the broadcast, and Joe Hand Promotions, Inc. held the license to distribute the "unscrambling" or "decoding" mechanisms for the Event. Accordingly, for Billy's Place to have made the Event lawfully available for viewing by its patrons, it would have had to enter into a contract with Joe Hand Promotions. All agree that no such contract existed.

On August 6, 2005, K.M. Acuff, an investigator hired by Joe Hand Promotions, went to Billy's Place and stayed for about thirty minutes. During that time, Ms. Acuff observed the Event being broadcast from televisions in Billy's Place. The defendants admit that they did not lawfully order the Event, but deny willfully procuring it in an attempt to evade the pay-per-view charges and deny having any cable boxes that they assert would have been necessary to unscramble the broadcast. According to defendants, the bar was closed the week before the Event, because Billy and Diane Williams were on vacation. Mr. and Mrs. Williams do not remember seeing the broadcast of the event, but assert that any such broadcast was probably the result of an unwitting tie-in to the cable line serving the building next door:

> If this Event was shown on my TV's it had to be on H.B.O. We had H.B.O. for a few months. The cable repair man was called to the building next door. He found a cable line hooked to my line to next door, and it showed we had HBO and he disconnected the line and told us of the work he had done.

Def's Ans. to Pl's Interrog. No. 7. The court is unsure by this answer whether the defendants are using the term "HBO" to refer generically to any premium cable service, or whether their reference is intended to be specific to the Home Box Office premium service. Defendants state that they called the cable service operator, who confirmed that a fight was broadcast on HBO on August 6, 2008. Def's Ans. to Pl's Interrog. No. 27. As noted previously, however, the Event

was broadcast by Showtime, on August 6, 2007. Regardless, defendants have proffered no evidence that contradicts plaintiff's allegations that the Event was broadcast without an appropriate license or contract from televisions in Billy's Place.

## II.

It should be well known to all in the legal community by now, but it nonetheless bears repeating that summary judgment as a matter of law is proper only where there exists no genuine issue of material fact. FED. R. CIV. P. 56 (c). In considering a motion for summary judgment, this court must construe the evidence and draw all reasonable inferences in favor of the non-moving party, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986), and determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). The party bearing the burden of proof on a particular issue – regardless of whether he is the movant or non-movant – cannot rely on mere allegations or conclusory statements, however. *See Maki v. Laako*, 88 F.3d 361, 364 (1996). He must point to in the record, or proffer, actual evidence. *Id.* What's more, the relied upon evidence must fit within certain parameters. It must be "of an evidentiary quality that demonstrates the existence of a genuine issue of material fact." *Bailey v. Floyd County Bd. of Educ.*, 106 F.3d 135, 145 (6th Cir. 1997)(emphasis added). To be of evidentiary quality, "[t]he proffered evidence need not be in admissible form, but its content must be admissible." *Id.* (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986)(emphasis in original omitted)).

Turning now to the substantive law in question, Title 47 of the United States Code, subsection 553(a)(1) states: "No person shall intercept or receive or assist in intercepting or receiving any communications service offered over a cable system, unless specifically authorized

to do so by a cable operator or as otherwise be specifically authorized by law." Title 47, United States Code, section 605 prohibits the unauthorized interception of encrypted satellite cable programming, such as the broadcast of the Event. Defendants arguably have admitted that they violated both statutes, and at a minimum have proffered no material admissible evidence to refute plaintiff's allegations with respect to liability (*i.e.,* that the Event was broadcast in Billy's Place without a license). At most, they merely have claimed that any observed violation was unintentional. Unfortunately for defendants, intent is not a factor in establishing liability under either statute. Accordingly, summary judgment in plaintiff's favor of the liability portion of this case is warranted under the law.

Defendants will have an opportunity to make their arguments regarding their intent during the damages trial, however, as intent *is* relevant to the calculation of plaintiff's remedies, *see* 47 U.S.C. §§ 553(b) and 605(e), as are (potentially[2]) defendants' profits from their unauthorized broadcast, which might not have been much more than negligible, as plaintiff's investigator observed no more than thirteen people in attendance during her visit to Billy's Place.

**II.**

For the reasons stated herein, plaintiff's request for summary judgment of defendants' liability will be granted by separate order entered concurrently with this memorandum opinion.

DATE:


cc: counsel of record

---

[2]*See, e.g.,* 47 U.S.C. § 553(c)(3)(A)(permitting an award of either actual damages or statutory damages).