UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

JOE HAND PROMOTIONS, INC.                                                                  PLAINTIFF

V.                                                                    CIVIL Action No. 3:07-CV-406-JDM

BILLY E. WILLIAMS, SR. and DIANE L. WILLIAMS
d/b/a BILLY'S PLACE                                                                       DEFENDANTS

## MEMORANDUM OPINION

Joe Hand Promotions, Inc., sued the defendants (collectively referred to herein for ease of reference as "Billy's Place") pursuant to 47 U.S.C. §§ 553 and 605 for broadcasting a pay-per-view boxing match without the appropriate authorization. Having secured summary judgment in its favor with respect to defendants' liability, Joe Hand now asks the court to award damages and costs.

### I.

The court recounted the salient facts in its memorandum opinion regarding Joe Hand's motion for summary judgment, but some facts merit repeating as the court determines an appropriate damages award. In August 2005, Showtime broadcast via closed-circuit transmission a boxing match, and some of the match's preliminary bouts. This closed-circuit broadcast (the "Event") was "encoded" and thus available for viewing only by purchase of the information or equipment necessary to "unscramble" the broadcast. Joe Hand Promotions, Inc., held the license to distribute the "unscrambling" or "decoding" mechanisms for the Event. Accordingly, for Billy's Place to have made the Event lawfully available for viewing by its patrons, it needed to purchase a sub-license from Joe Hand Promotions. All agree that no such

purchase took place.

On the night of the Event, K.M. Acuff, an investigator hired by Joe Hand Promotions, went to Billy's Place and stayed for about thirty minutes. During that time, Ms. Acuff observed the Event being broadcast from at least one of four televisions in Billy's Place. Although Billy's Place has the capacity to serve 120 persons, Ms. Acuff observed no more than ten to thirteen patrons in the bar during her visit.

The defendants admit that they did not lawfully order the Event, but deny willfully procuring it in an attempt to evade the pay-per-view charges and deny having any cable boxes that they assert would have been necessary to unscramble the broadcast. According to defendants, the bar was closed the week before the Event, because Billy and Diane Williams were on vacation. Mr. and Mrs. Williams assert that any such broadcast was probably the result of an unwitting tie-in to the cable line serving the building next door. Regardless, defendants proffered no evidence to contradict plaintiff's allegations that the Event was broadcast from televisions in Billy's Place without an appropriate license.

## II.

Title 47 of the United States Code, sub-section 553(a)(1) states: "No person shall intercept or receive or assist in intercepting or receiving any communications service offered over a cable system, unless specifically authorized to do so by a cable operator or as otherwise be specifically authorized by law." Title 47, United States Code, section 605 prohibits the unauthorized interception of radio communications, but courts have held that its terms apply to encrypted cable programming from satellite transmissions, such as the Event. *See* 47 U.S.C. § 605(a); *Nat'l Satellite Sports, Inc., v. Eliadis, Inc.*, 253 F.3d 900, 914 (6th Cir. 2001)(noting, in support of its holding on a narrower ground, "the legislative history of the amendments to the

Communications Act in 1984 and 1988 reveals that Congress intended to bring cable and satellite communications under the protection of the Act ..."). Both statutes provide damages for aggrieved parties. *See* 47 U.S.C. §§ 553(c)(3) and 605(e)(3)(C). Although claimant may elect to receive either its actual damages, or an amount within the statutorily-prescribed range under either statute, courts typically permit a claimant to recover under only one section – specifically §605 – not both. *See, e.g., Joe Hand Promotions*, *Inc. v. Willis*, 2009 WL 369511, *1 (N.D. Ohio 2009); *Top Rank Inc. v. Tacos Mexicanos*, 2003 WL 21143072, *3 and n.1 (E.D.N.Y. 2003).

Where a claimant elects to recover statutory damages, as Joe Hand has done in this case, it may recover between $1,000 and $10,000 for each violation, in an amount the court considers just. 47 U.S.C. § 605(e)(3)(C)(i)(II) The court also has the discretion to increase the award beyond the statutory range, if it finds the violation "was committed wilfully and for purposes of direct or indirect commercial advantage or private gain," 47 U.S.C. § 605(e)(3)(C)(ii), or decrease the award, if it finds "that the violator was not aware and had no reason to believe that his acts constituted a violation," 47 U.S.C. § 605(e)(3)(C)(iii). An award of attorney fees and costs, however, is mandatory. 47 U.S.C. § 605(e)(3)(B)(iii).

Had Billy's Place lawfully obtained the broadcast, the cost of the license for a bar of their size would have been $700. *See* Aff. of Joe Hand, Jr. at ¶ 8 and Ex. 1 (document no. 27-2). The court therefore finds that the base amount of damages to be awarded is most appropriately fixed at the lowest end of the scale – at $1,000. Whether that amount should be increased due to defendants' alleged wilfulness, or decreased due to their alleged ignorance, requires more thoughtful analysis.

The defendants have consistently asserted that their violation of the statute was

unintentional and unknowing.  The court feels fairly confident in taking judicial notice of the fact that it is the rare person who does not know it is unlawful to tie-into another person's cable service, or to pirate pay-per-view transmissions, but the defendants have never asserted that they did not know what happened was against the law.  Rather, they have repeatedly claimed that they did not know that an tie-in had occurred.  Both Billy and Diane Williams were in the bar during the broadcast, *see Defs.' Resp. to Req. for Admis.* (document no. 20-5), however, and thus either knew or should have known that a pay-per-view service for which they had not paid was being broadcast on their televisions, so their assertions of ignorance ring somewhat hollow and do not support any application of § 605(e)(3)(C)(iii).  Their claims that they did not willfully violate the statute for the purpose of financial gain are more credible, however.

There simply is no evidence that defendants knew in advance that they had unlawful access to the fight and used that access for their commercial gain, as an enhancement pursuant to 47 U.S.C. § 605(e)(3)(C)(ii) would require.  There is no evidence in the record that they advertised or otherwise used the programming as an incentive to bring more patrons into the bar, which, according to plaintiff's own evidence, was at merely one-tenth its capacity during the broadcast (ten to thirteen patrons).  Nor is there any evidence of any of the other customary indicia that a money-making event had been promoted (*e.g.,* a special cover charge for the duration of the fight).  It would therefore stretch credulity for the court to find that defendants' had wilfully intercepted the Event for the purposes of financial gain.  If they had, surely they would have employed some means of increasing their patronage that night.  An enhancement of damages beyond $1,000 is therefore not appropriate.

As for the attorney fees and court costs, the award is mandatory pursuant to the statute, but the court has discretion to award only those fees that are reasonable.  *See* 47 U.S.C. §

605(e)(3)(B)(iii).  The court has carefully reviewed plaintiff's attorneys' billing records, because the evidence indicates that Joe Hand's actual damages would have been a relative pittance, and the reasonableness of any attorney's fees is often evaluated with any eye toward the relative amount of his client's anticipated recovery.  While the amount spent in this case is indeed large in comparison both to the amount the actual damages that could have been recovered and the amount this court has deemed appropriate to award pursuant to the statutory guidelines, the plaintiff's decision to bring a claim was not inherently unreasonable.  Joe Hand had the right to file suit under the statutes in question, and litigation just is not cheap.  Nevertheless, there is no indication of padding, churning, or inefficiency apparent from the bill, so the court cannot say that the tasks performed and the time spent were "unreasonable" as that term is commonly understood in the context of attorney fees.  The court will therefore award plaintiff the amount of attorney fees it has requested, plus court costs.

### III.

For the reasons stated herein, and by separate order entered concurrently with this memorandum opinion, the court will award plaintiff damages in the amount of $1,000, attorney fees in the amount of $3,115, and court costs.

DATE:   January 22, 2010

*James D. Moyer*
**James D. Moyer**
**United States Magistrate Judge**

cc:   counsel of record